# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0195
Filed July 22, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Shelly Marie Esquer,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Greene County,
The Honorable Joseph McCarville, Judge.

———————————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————————

Martha J. Lucey, State Appellate Defender, and Shellie L. Knipfer,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Martha E. Trout (until withdrawal),
and Adam Kenworthy, Assistant Attorneys General, attorneys for appellee.

———————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

1

**CHICCHELLY, Judge.**

Shelly Esquer appeals her convictions for passing a winning wager to another person, in violation of Iowa Code section 99F.15(4)(o) (2022), and second-degree fraudulent practice, in violation of Iowa Code sections 714.8(3) and 714.10(1)(a). She challenges the sufficiency of the evidence proving the intent elements of each crime. Because substantial evidence supports it, we affirm Esquer's conviction and sentence for passing a winning wager to another person. We reverse her conviction for second-degree fraudulent practice. Finally, we sever that judgment and sentence and allow the sentence for Esquer's conviction for passing a winning wager to another person to stand.

## BACKGROUND FACTS AND PROCEEDINGS

On the afternoon of December 30, 2022, Esquer was playing[1] slot machines at the Wild Rose Casino in Jefferson. She sat in a chair in front of a machine on the right end of a row of six machines. The chair in front of the machine to her left was empty. The casino's surveillance video shows that Esquer played the machine in front of her while leaning across to simultaneously play the machine to her left. She often draped her arm across the neighboring chair and occasionally rested her foot on it.

At around 1:25 p.m., the machine to Esquer's left hit a bonus that resulted in "free spins." During the bonus sequence, the slot machine places wagers and activates the spins without the player needing to press a button.

---

[1] The slot machines are played when a patron presses a button, which activates a "spin." The person who presses the button on a spin that results in a jackpot wins that jackpot and is the only person who can claim it.

The bonus sequence lasted about ten minutes and resulted in a jackpot of $3,898.

When Esquer pressed the button that resulted in the jackpot, her companion, John Cook, was playing a machine in a different area. After the bonus sequence began, Cook came over and sat down in the chair in front of the winning machine. The surveillance video shows Esquer talking and gesturing animatedly [2] to Cook as the bonus sequence continued. At 1:32 p.m., Esquer left and got a drink for Cook and one for herself before returning to sit on his right. When Cook leaves for a time, Esquer sat sideways in her seat with her left arm and foot propped on the chair in front of the winning machine.

When the bonus sequence ended at 1:35 p.m., the light atop the winning machine began blinking. The purpose of the blinking light is to alert a casino attendant to approach and collect identification and a W-9 tax form from the winning patron, both of which are needed to claim the jackpot. Both Cook and Esquer were in the seats when the attendant arrived at 1:40 p.m. The attendant asked Esquer and Cook who pushed the button, and they both replied that Cook had won the jackpot.

Cook filled out a W-9 and provided his driver's license. A supervisor then verified the jackpot, reviewed the W-9, and brought Cook to guest services. But Casino surveillance staff reviewed the surveillance video and confirmed that Esquer had pressed the button to win the jackpot. The casino told Esquer that she had to claim the jackpot. Esquer said she needed to get

---

[2] Esquer bounces, claps her hands, shifts in her seat, leans in to point at the screen of the winning slot machine, and shakes the back of Cook's chair. In contrast, Cook remains fairly still while sitting in the chair and watching the machine, speaking and gesturing to it occasionally.

her identification from the car and left the casino. She did not return that day.

The casino held the jackpot until Esquer returned with identification on January 3, 2023. Esquer filled out a W-9 form and provided the identification to the staff. The casino then issued a W-2G tax form for the winnings, which Esquer signed and dated. A casino employee checked a database to see if Esquer owed money to the State as Iowa Code section 99F.19 requires that the casino deducts that debt as a "setoff" from gambling winnings. Because Esquer owed the State more than she won, the casino withheld the funds. Esquer had a similar experience in April 2022 when she won a jackpot that was withheld from her as a setoff to satisfy existing debts to the State.

The State charged Esquer with one count of passing a winning wager to another person and one count of second-degree fraudulent practice, which are both class "D" felonies. A jury found Esquer guilty of both charges, and the district court sentenced her to serve concurrent five-year sentences on each count. Esquer appeals.

## SCOPE AND STANDARD OF REVIEW

We review challenges to the sufficiency of the evidence for corrections of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). A jury's verdict is binding on appeal if supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* In reviewing sufficiency challenges, "we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may

fairly and reasonably be deduced from the record evidence.'" *Id.* (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)).

## DISCUSSION

Esquer challenges the evidence showing her guilt on both counts. First, she contends that the State did not prove beyond a reasonable doubt that she acted with the specific intent to avoid a setoff. She also contends there is insufficient evidence to show that she knowingly executed or tendered a false certificate required by law or in support of payment.

## I. Does sufficient evidence support Esquer's conviction for passing a winning wager to another person?

The State charged Esquer with a class "D" felony for "[k]nowingly or intentionally pass[ing] a winning wager or share to another person or provid[ing] fraudulent identification in order to avoid the application of a setoff." Iowa Code § 99F.15(4)(o). To convict Esquer of passing a winning wager to another person, the State had to prove four elements:

> 1. That on or about December 30, 2022, Defendant won a jackpot, while playing a gambling game at Wild Rose Casino.
>
> 2. That Wild Rose Casino is licensed by the State of Iowa to conduct gambling games.
>
> 3. That on or about December 30, 2022, Defendant knowingly or intentionally passes a winner wager or share to another person.
>
> 4. That the Defendant did so with the specific intent to avoid application of the setoff.[3]

---

[3] The jury instructions define a "setoff" as "the withholding of all or any portion of the winnings of a gambling game to pay a debt owed to a public agency through the State of Iowa Offset Program."

The court further instructed the jury that "specific intent" means "not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind."

Esquer challenges the evidence showing the fourth element: that she acted with the specific intent to avoid application of the setoff. She contends that there is no evidence showing that she knew the person who pressed the button was the only one who could claim the jackpot. She also notes that the casino did not post notices saying that the law requires winnings over $1,200 to be used as a setoff to pay certain debts.

Because most criminal defendants will not admit to having the intent required to commit a crime, there is rarely direct evidence on the question of specific intent. *See State v. Brown*, 32 N.W.3d 774, 778 (Iowa 2026). Instead, specific intent is usually shown by drawing reasonable inferences from the circumstantial evidence. *Id.*

First, the lack of notices posted by the casino does not prevent a finding Esquer had knowledge of the setoff based on her prior personal experience. Evidence was presented showing that eight months earlier, Esquer had won a jackpot of over $1,200 at the same casino. When Esquer won that jackpot, the casino gave her a State-directed offset letter that set out the amount she owed the State and informed her that amount would be withheld as setoff. The jury could thus find that Esquer knew the casino would take her winnings as setoff because it had done so before.

Second, there is substantial evidence from which the jury could infer Esquer knew that only the person who pressed the button could claim the jackpot based on the testimony of the casino attendant. The attendant

explained her practice of informing patrons about who may claim a jackpot when she approaches a winning machine:

> Q. What if you arrive at a slot machine and there is two people in front of the machine, what do you do under those circumstances? A. Well, I'll congratulate them first but then I have to ask which one of them pushed the button.
>
> Q. Those are the words you use? A. Yes. I have to ask which one of you pushed the button for the win.
>
> Q. Why do you ask which person pushed the button? A. Because whoever pushed the button is the one that needs to claim the jackpot.
>
> Q. And you explain that to the customers? A. Yes.

The State then played the surveillance video for the attendant while she testified about the specific conversation she had with Cook and Esquer:

> Q. What were you doing with your hands at the beginning of that conversation? A. Asking which one pushed the button.
>
> Q. And what—can you describe what you were doing with your hand? A. I was letting them know, were you two playing together, you know, which one of you, I need to know, hit the button for the win and—
>
> Q. In the beginning, what did the defendant say? What did Ms. Esquer say when you asked that question? A. That the gentleman in the chair beside her did.
>
> Q. And what was she doing with her hands when she told you that the man was the man who hit the button? A. Pointing at him.
>
> Q. How many times did the defendant point to the man and say he is the person who won the jackpot? A. I believe it was three times.

Although the surveillance video showed that Cook was elsewhere in the casino when the bonus hit, Esquer repeated her claim that Cook won after the attendant informed her she needed to know who pressed the button that produced the win.

7

The evidence and reasonable inferences that can be drawn from it support the jury's finding that Esquer passed a winning wager to Cook with the specific intent to avoid setoff of the funds she won. We affirm her conviction for passing a winning wager to another person.

## II. Does sufficient evidence support Esquer's conviction for second-degree fraudulent practice?

Esquer next challenges the evidence showing she is guilty of second-degree fraudulent practice. The State alleged that Esquer was guilty of fraudulent practice by aiding and abetting Cook in tendering a W-9 form, which is needed to claim a winning jackpot over $3,000. The marshaling instruction informed the jury that the State had to prove two elements to find Esquer guilty of fraudulent practice:

> 1. On or about December 30, 2022, [Esquer] knowingly allowed, or did aid and abet, another person to execute a false certification under penalty of perjury, false affidavit, or false certificate which was required by law or was given in support of a claim for compensation, indemnification, restitution, or other payment.
>
> 2. [Esquer] did these acts knowingly.

The court instructed the jury that "aid and abet" means

> to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act is some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting." Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."

The evidence shows that after claiming he won the jackpot, Cook tendered a W-9 form with his name, address, and Social Security Number. Cook also signed the form, certifying under penalty of perjury that (1) he

provided the correct taxpayer identification number, (2) he was not subject to backup withholding, (3) he is a United States citizen, and (4) any Foreign Account Tax Compliance Act code listed on the form is correct. Nothing in the record suggests that Cook provided inaccurate information or perjured himself by signing the certification.

Esquer contends there is insufficient evidence showing that she knowingly allowed or aided and abetted Cook in executing a false certification for payment of the jackpot. She claims that because Cook did not make any false statements on the W-9, there was no fraudulent practice for her to knowingly allow or aid and abet.[4]

The State contends that the accuracy of the information reported in the W-9 is irrelevant to proving fraudulent practice. In the State's view, Esquer is guilty by knowingly allowing or aiding and abetting Cook in tendering the W-9 because he did so for the purpose of falsely claiming the winning jackpot. The State notes that the jury instructions define the term "false" in "false certification" to mean that the certification was executed or tendered with the intent to deceive, not that the certification itself was false. In other words, fraudulent practice under section 714.8(3) only requires proof of deceptive intent, not proof that the certification itself is false.

The jury instruction defining "false" as used in fraudulent practice was approved by the supreme court in *State v. Hoyman*, 863 N.W.2d 1, 16 (Iowa 2015). The defendant in *Hoyman* was convicted of first-degree fraudulent practice under section 714.8(4). 863 N.W.2d at 2; *see also* Iowa Code § 714.8(4) (defining fraudulent practice as making an entry in or

---

[4] Because the casino informed Cook and Esquer that Esquer had won the jackpot, Cook never signed a W-2G form certifying that he was the only person entitled to the jackpot.

9

alteration to business records knowing the same to be false). The trial court instructed the jury that the State had to prove that the defendant (1) made an entry into the records of a business, and (2) knew the entry was false. *Hoyman*, 863 N.W.2d at 7–8. The defendant argued that the court should have further instructed the jury that the State had to prove he had an intent to deceive when he made the entry. *Id.* at 8. The supreme court agreed that the legislature did not intend to criminalize every knowingly untrue statement made in a public record and interpreted the word "false" to mean "deceptive." *Id.* at 15. Because the court found that "intent to deceive is an element" of fraudulent practice under Iowa Code section 714.8(4), it held "the jury should be instructed that 'false' means the defendant made the entry or alteration with intent to deceive." *Id.* at 15, 16.

Following *Hoyman*, the district court properly instructed the jury that the term "false" used in the marshaling instruction "means the person who executed or tendered the certification, affidavit, or certificate did so with the intent to deceive." But that definition *adds* to the requirement of false information or untruth rather than substituting for it. *See id.* at 15 (noting that both definitions of "false" discussed in its analysis require a knowing untruth); *False*, *Black's Law Dictionary* (12th ed. 2024) (defining "false" as "Untrue," "Deceitful; lying," "Not genuine; inauthentic," and "Wrong; erroneous"). Esquer was charged under section 714.8(3), which defines fraudulent practice as "knowingly execut[ing] or tender[ing] a false certification under penalty of perjury, false affidavit, or false certificate, if the certification, affidavit, or certificate is required by law or given in support of a claim for compensation, indemnification, restitution, or other payment." Iowa Code § 714.8(3). Under *Hoyman*, section 714.8(3) requires the State to prove that the defendant (1) executed or tendered a certificate (or aided and

10

abetted someone who did), (2) knew that the certificate is false, and (3) and did so with an intent to deceive.

This interpretation is supported by a plain reading of the statute. The repeated use of "false" in each clause following "executes or tenders" modifies the nouns certification, affidavit, or certificate. *See, e.g.*, *State v. Sievers*, 20 N.W.3d 203, 208 (Iowa 2025) (holding that the adjective "initial" in the term "initial disclosure" in Iowa Code section 622.31B(2) "does what adjectives do" by modifying the noun "disclosure," thus limiting the types of disclosures excepted from the hearsay rule). Thus, there must be a deception in the certification, affidavit, or certificate itself, not just in the tendering of it. If the legislature intended to criminalize the act of executing or tendering accurate certifications, affidavits, or certificates that are tendered with an intent to deceive, it could have placed "falsely" with "knowingly" before "executes or tenders." Instead, the statute criminalizes the act of executing or tendering the false document.[5]

---

[5] Prior appeals involving fraudulent-practice convictions under section 714.8(3) all concern false representations made or aided and abetted by the defendant rather than truthful representations intended to deceive. *See, e.g.*, *State v. Gentile*, 515 N.W.2d 16, 19–20 (Iowa 1994) (finding substantial evidence supported a conviction for fraudulent practice under section 714.8(3) where the defendant sold "bogus mortgages" because in each instance, the defendant "(1) tendered a false certificate (2) that is required by law to be given or (3) is given in support of a claim for payment"); *State v. Horton*, 509 N.W.2d 452, 454 (Iowa 1993) (affirming a conviction under section 714.8(3) for lying about residency on a fishing license application); *State v. Das*, No. 12-0535, 2013 WL 2370712, at *3 (Iowa Ct. App. May 30, 2013) (finding the marshaling instruction accurately described the elements of fraudulent practice as defined in section 714.8(3) by requiring the State to prove "The marshaling instruction for fraudulent practice required the State to prove (1) Das made false statements to Iowa Workforce Development by failing to report his income accurately and (2) Das knew the statements were false"); *State v. Kraklio*, No. 03-0813, 2005 WL 156803, at *1 (Iowa Ct. App. Jan. 26, 2005) (involving

A W-9 with correct information and a truthful certification does not satisfy the statutory requirement for fraudulent practice as described in section 714.8(3). Because the W-9 Cook executed was not a false certification, the State did not prove Esquer aided or abetted Cook in a fraudulent practice. We therefore reverse Esquer's conviction for second-degree fraudulent practice.

## SUMMARY

We affirm Esquer's conviction for passing a winning wager to another person and reverse her conviction for second-degree fraudulent practice. We sever the judgment and sentence for Esquer's fraudulent-practice conviction and allow the sentence for her conviction for passing a winning wager to another person to stand. *See State v. Nall*, 894 N.W.2d 514, 525 (Iowa 2017). We remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

charges of first-degree fraudulent practice based on making or aiding and abetting another in making fraudulent statements to receive government benefits); *State v. Clark*, No. 03-0689, 2004 WL 2002423, at *4–5 (Iowa Ct. App. Sept. 9, 2004) (finding substantial evidence supported a conviction under section 714.8(3) where "both Clark and the women for whom she allegedly provided childcare provided the Department with false information in order to obtain money fraudulently from the State").